UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

CATHERINE GOMEZ                                          CIVIL ACTION

VERSUS                                                           NO. 04-1521

ORLEANS PARISH SCHOOL BOARD                   SECTION "N" (1)

## ORDER AND REASONS

Before the Court is the Motion for Summary Judgment filed by the defendant Orleans Parish School Board. (Rec. Doc. No. 41). For the reasons that follows, the defendant's motion is GRANTED IN PART and DENIED IN PART.

## I.  BACKGROUND

The relevant background, drawn in the light most favorable to the plaintiff, is as follows: Since 1990, Catherine Griffin Gomez has been employed as a secretary with the Orleans Parish School Board (hereinafter referred to as the "School Board" or "OPSB"). Beginning in 1992, Ms. Gomez worked as a "secretary I" for the School Board's Retirement Services Department. In November 2000, Jean Morris-Anderson became director of the Retirement Services Department. It is at this time that Ms. Gomez allegedly began to be subjected to racially discriminatory terms and conditions of her employment. Ms. Gomez is Caucasian; Ms. Anderson and all of Ms. Gomez's co-workers in the Retirement Services Department are African-American. The discriminatory acts are alleged to all have been committed by Ms. Anderson on a continuous basis, and include such acts

as the use of racially derogatory remarks directed toward Ms. Gomez (both in and out of the presence of Ms. Gomez), excluding Ms. Gomez from regular staff meetings and from staff lunches as well as other social office functions, and denying Ms. Gomez the opportunity to do overtime work available to other co-workers.  *See* Complaint, ¶ 6 (Rec. Doc. No. 1).

   Within six months of Ms. Anderson's arrival at the Retirement Services Department, Ms. Gomez complained to Alvi Mogilles, the OPSB Director of Human Resources, regarding Ms. Anderson's racially derogatory remarks.  According to Ms. Gomez, she complained to Ms. Mogilles numerous times thereafter, but never in the form of a written complaint, and her last complaint to Ms. Mogilles was made around July of 2002.  Around that same time (July of 2002), Ms. Anderson attempted to assert a complaint to Dr. James Lloyd of the School Board's internal compliance office, but she allegedly was not able to see him at that time.

   On or about September 5, 2002, Ms. Gomez filed a complaint with the Equal Employment Opportunity Commission ("EEOC").  In the Charge of Discrimination, Ms. Gomez claimed that she had been subjected to discrimination based on her race, during the time period of November 1, 2000 through September 3, 2002.  On June 25, 2003, the EEOC issued a right-to-sue letter to Ms. Gomez.

   In the meantime, Ms. Gomez alleges that she was subjected to retaliation for having filed her complaint with the EEOC, and for having attempted to make a complaint to Dr. Lloyd.  Such retaliatory acts, again allegedly committed by Ms. Anderson, included (i) an increase in Ms. Gomez's work duties without additional pay or training; (ii) a poor evaluation and other threatened disciplinary actions; and (iii) the wrongful deduction of her pay and vacation benefits.  *See* Complaint, ¶ 9.  These retaliatory acts, according to Ms. Gomez, culminated on March 19, 2003, when Ms. Anderson, without providing any prior notice, had Ms. Gomez transferred to the

Transportation Department of the OPSB.[1]  *Id.*

In June 2003,[2] Ms. Gomez filed a second complaint with the EEOC, alleging that she was subjected to discrimination in the form of retaliation, for the time period January 6, 2003 through March 10, 2003.  On February 27, 2004, the EEOC issued plaintiff a right-to-sue letter. This lawsuit, filed on June 1, 2004, followed.  In her Complaint, plaintiff alleges that the defendant OPSB is liable to her for damages resulting from her having been subjected to racial discrimination, a hostile work environment, and retaliation, all in violation of Title VII of the Civil Rights Act of 1964, and the Louisiana Employment Discrimination Law, La. Rev. Stat. 51:2256, *et seq.*  *See* Complaint, ¶¶ 6, 8-10.

On June 28, 2005, defendant filed the motion for summary judgment now before the

---

[1]Ms. Gomez continues to be employed by the OPSB as the secretary for the Director of Transportation.

[2]On August 10, 2005, the plaintiff submitted, via facsimile, a "Response to Reply in Motion for Summary Judgment," in which the plaintiff supplements and amends her statement of uncontroverted facts in the following respects:  (1) the second EEOC charge was filed on March 28, 2003, and not in June of 2003, as she stated during her deposition; (2) the date of the second right-to-sue letter is February 27, 2004; (3) plaintiff received the second right-to-sue letter on March 2, 2004; and (4) she was referred to as "Hey" until her last day in the Retirement Services Department.  In support thereof, plaintiff has attached a signed and dated copy of the EEOC charge filed on March 28, 2003, Charge No. 270-2003-01070, and her supplemental and amended affidavit.  Prior to August 10, 2005, the Court only had before it, insofar as these amended factual statements are concerned:  (1) an unsigned and undated copy of plaintiff's second EEOC charge; and (2) the plaintiff's testimony that she filed the second charge in June 2003.  The parties had not offered any evidence relative to the date on which plaintiff received the second right-to-sue letter.  Having reviewed those factual statements in relation to the earlier filed summary judgment evidence, the Court finds that the matters set forth in plaintiff's response have no legal effect on the Court's findings as set forth in this Order and Reasons.  This is so because, with the corrected filing date of March 28, 2003, plaintiff's retaliation claim is timely in its entirety.  In the Order and Reasons, the Court holds that plaintiff's claim of retaliation is untimely only insofar as plaintiff bases that claim on a poor performance evaluation received in July 2002.  Notwithstanding the untimeliness, that claim also would fail on the merits because a poor performance evaluation does not constitute an adverse employment action.  Second, with plaintiff's date of receipt of the right-to-sue letter, it is clear that plaintiff filed suit on the 90th day, June 1, 2004, and thus her complaint, insofar as she alleges retaliation, is timely.  Technically, the 90th day falls on Monday, May 31, 2004; however, that date was a federal holiday, Memorial Day.  Thus, the 90th day for filing a claim based on the second EEOC charge is the next day, Tuesday, June 1, 2004.

Court.  In its motion, the OPSB contends that it is entitled to a dismissal of the plaintiff's Title VII claims against it because the plaintiff (i) did not complain to the EEOC about her supervisor's allegedly discriminatory acts within the applicable limitations period, (ii) waited over 14 months after the date of her transfer before filing the instant lawsuit, (iii) was not subjected to continuing discriminatory conduct, (iv) did not suffer an adverse employment action, and (v) is not entitled to damages under Title VII for the actions recited in her complaint because the allegedly discriminatory acts were isolated and were not severe or persistent.  Plaintiff opposes the defendant's motion.

## II.   LAW AND ANALYSIS

### A.   Summary Judgment Standard

"Summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' " *Kee v. City of Rowlett, Tex.*, 247 F.3d 206, 210 (5th Cir.), (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548 (1986) (quoting Fed. R. Civ. P. 56(c)), *cert. denied,* 534 U.S. 892, 122 S. Ct. 210 (2001).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348 (1986).  Substantive law determines the materiality of facts, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505 (1986).

The moving party "bears the initial responsibility of informing the district court of the basis of its motion, and identifying those portions of [the record] ... which it believes demonstrate the absence of evidence of a genuine issue of material fact." *Celotex Corp.,* 477 U.S.

at 323.  Once the moving party meets this burden, the burden shifts to the non-movant "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322.  "[M]ere allegations or denials" will not defeat a well-supported motion for summary judgment. Fed. R. Civ. P. 56(e).  Rather, the non-movant must come forward with "specific facts" that establish an issue for trial. *Id.*  "A dispute over a material fact is genuine if the evidence is such that a jury reasonably could return a verdict for the nonmoving party." *Kee*, 247 F.3d at 210  (internal quotations omitted).  To that end, when deciding a motion for summary judgment, the Court must resolve disputes over material facts in the non-movant's favor.

**B.**     **Plaintiff's Racial Discrimination and Hostile Work Environment Claims are Time-Barred**.

Title VII sets forth certain deadlines and procedures for bringing a discrimination lawsuit.  Because Louisiana is a deferral state, a claimant must file a charge of discrimination with the EEOC or with a state or local agency with authority to grant or seek relief within 300 days of the alleged discriminatory act.  *See* 42 U.S.C. § 2000e-5(e)(1).  Although the filing of an EEOC charge is not a jurisdictional prerequisite, it "is a precondition to filing suit in district court." *Dao v. Auchan Hypermarket,* 96 F.3d 787, 789 (5th Cir. 1996).  The timeliness of the charge is a requirement subject to waiver, estoppel and equitable tolling.  *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393, 102 S.Ct. 1127 (1982); *Manning v. Chevron Chem. Co.*, 332 F.3d 874, 880 (5th Cir. 2003).  However, the Supreme Court and the Fifth Circuit have advised that the equitable doctrines of tolling and estoppel are to be applied sparingly.  *Ramirez v. City of San Antonio*, 312 F.3d 178, 183 (5th Cir. 2002) (quoting *National R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 113, 122 S.Ct. 2061 (2002)).  The Supreme Court has observed that "'strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the

law.'" *Morgan*, 536 U.S. at 108 (quoting *Mohasco Corp. v. Silver*, 447 U.S. 807, 826, 100 S.Ct. 2486 (1980)).

Generally, the limitations period begins on the date the discriminatory act occurred, and a plaintiff cannot sustain her claims based on incidents that occurred more than 300 days before the filing of a charge of discrimination. *See Morgan*, 536 U.S. at 110; *Webb v. Cardiothoracic Surgery Assocs. of N. Tex., P.A.*, 139 F.3d 532, 537 (5th Cir. 1998). When considering whether discriminatory acts that fall outside of the limitations period are actionable under Title VII, the Supreme Court has distinguished claims alleging discrete discriminatory acts from those alleging a hostile work environment. *See Morgan*, 536 U.S. 101 (clarifying the limits of the "continuing violations" theory and holding that, in contrast to discrete acts, claims based on a hostile work environment will not be time barred so long as all acts which constitute the claim are part of the same unlawful practice and at least one act falls within the time period).

In its motion for summary judgment, the School Board asserts, for the first time,[3] the affirmative defense of the statute of limitations, *i.e.*, that plaintiff's complaint, filed June 1, 2004,

---

[3]Plaintiff argues that OPSB has waived the limitations defense because it did not raise the issue in its answer or in any motion to dismiss. Rule 8(c) of the Federal Rules of Civil Procedure requires affirmative defenses, including the statute of limitations, to be set forth in a defendant's responsive pleading. Generally, a party's failure to raise an affirmative defense in its first responsive pleading waives the defense. *Lucas v. United States*, 807 F.2d 414, 417 (5th Cir. 1986). However, a defendant does not waive an affirmative defense if the defendant raises the defense at a pragmatically sufficient time, and the plaintiff is not prejudiced in her ability to respond. *Chambers v. Johnson*, 197 F.3d 732, 735 (5th Cir. 1999) (quoting *Lucas*, 807 F.2d at 418).

In the instant matter, the Court finds that OPSB did not waive its affirmative defense of the statute of limitations by failing to plead the defense in its answer. Since plaintiff admittedly was able to respond to the School Board's limitations argument in her opposition to OPSB's summary judgment motion, *see* Pl.'s Mem. in Opposition, p. 3 (Rec. Doc. No. 44), the Court finds that the defendant raised its defense at a pragmatically sufficient time, and, as a result, Ms. Gomez was not prejudiced in her ability to respond. *See, e.g., Guthrie v. J.C. Penney Co., Inc.*, 803 F.2d 202, 210 (5th Cir. 1986) (approving allowing amendment to raise limitations defense 11 days before trial). In any event, to avoid any perceived deficiency in the pleadings, the defendant is hereby directed to file an amended answer pleading the limitations defense no later than the close of business on Wednesday, August 17, 2005.

is not timely.  Specifically, the defendant argues that certain of the plaintiff's claims are subject to dismissal because the plaintiff did not file an EEOC charge within 300 days of the respective discriminatory act(s).  With regard to the initial EEOC charge filed on September 5, 2002, the defendant contends, assuming *arguendo* that plaintiff timely filed suit, that all allegedly discriminatory acts occurring more than 300 days prior to September 5, 2002 (*i.e.*, on or about November 9, 2001) are time-barred.  Likewise, with regard to the second EEOC charge, filed in June of 2003,[4] the defendant maintains that all allegedly discriminatory acts occurring more than 300 days prior to June 2003 (*i.e.*, or on or about August 6, 2002) are time-barred.  The defendant further argues that the plaintiff was not subjected to continuing discriminatory conduct, as the incidents of which she complains were discrete, individual actions, and because plaintiff understood by the time she filed her first EEOC charge, at the very latest, that she may have a Title VII claim against the School Board.  Plaintiff responds that the facts alleged and as supported by the summary judgment evidence of record demonstrate that there exists genuine issues of material fact as to whether the claims at issue involve a continuing violation.

Having reviewed the record and the applicable law, the Court finds that plaintiff's claims that she was subjected to discrimination based on race and a hostile work environment, all in violation of Title VII, are time-barred.  This is so because (i) plaintiff did not file suit within 90 days of receiving her right-to-sue letter relative to her initial EEOC charge; and (ii) plaintiff's second EEOC charge is properly confined to her claim of retaliation.

As set forth earlier, plaintiff filed two charges with the EEOC.  First, on or about

---

[4]Plaintiff testified that the second EEOC charge was filed in June 2003.  Deposition of Catherine Gomez, p. 27 (Def.'s Mot. for Summ. J., Ex. A).  The defendant, however, has only submitted an unsigned and undated charge form.  Construing the charge most favorably to the plaintiff for purposes of the limitations defense, the Court will assume that the second EEOC charge was filed on or about Monday, June 2, 2003.

September 5, 2002, plaintiff filed a Charge of Discrimination against OPSB, wherein she alleged

the cause of discrimination as race[5] during the time period of November 1, 2000, through September

3, 2002.  *See* Charge of Discrimination No. 270A201909 (the "909 charge") (Def.'s Mot. for Summ.

J., Ex. B).   In the section entitled "Particulars," Ms. Gomez stated as follows:

> I have been continuously subjected to racially derogatory remarks while employed
> as a Secretary for Retirement Services Department.  I also have been continuously
> denied attendance at department meetings, departmental lunches and denied
> overtime.  I have been employed with the school board since 1/90.
>
> I have made complaints to Alvi Anderson-Mogilles, Black, Executive Director of
> Human Resources, about being referred to as "hey" and "White trailer park trash"
> and "that White woman" by the Black Retirement Services director.  I asked her not
> to refer to me in such a manner.  No reason(s) were given for my exclusion from
> most of department's activities.
>
> I believe that I have been discriminated against because of my race, White, in
> violation of Title VII of the Civil Rights Act of 1964, in that:
>
> A.      I am the only White employee working in Retirement Services.
>
> B.      The Black employees are not referred to as "hey" or other derogatory names.
>
> C.      No action has been taken to eliminate the adverse treatment, which creates
>           a hostile work environment.
> ******
> D.      To my knowledge, Black employees from outside of department were
>           allowed to work overtime for Retirement Services.

*Id.*  On June 25, 2003, the EEOC sent plaintiff a Dismissal and Notice of Rights letter, in which the

EEOC advised Ms. Gomez that, "[b]ased upon its investigation, the EEOC is unable to conclude that

the information obtained established violations of the statutes."  *See* Dismissal and Notice of Rights,

Charge No. 270A201909 (attached to Pl.'s "Ex Parte Motion for Leave to Supplement MSJ

Record") (Rec. Doc. No. 47).  Ms. Gomez was also notified that

---

[5]The form includes a section entitled "Cause of Discrimination," below which are nine different
boxes for which a claimant is instructed to check the appropriate box(es) indicating the basis (or bases) of
the alleged  discrimination.  Plaintiff only checked the box marked "Race."

[y]ou may pursue this matter further by bringing suit in federal or state court against the respondent(s) named in the charge. **If you decide to sue, you must sue WITHIN 90 DAYS from your receipt of this Notice**. Otherwise your right to sue based on the above-numbered charge will be lost."

*Id*. (emphasis in original).

Also during June 2003, plaintiff filed a second Charge of Discrimination against OPSB, wherein she alleged the cause of discrimination as retaliation[6] during the time period of January 6, 2003, through March 10, 2003.[7] *See* Charge of Discrimination No. 270-2003-01070 (the "070 charge") (Def.'s Mot. for Summ. J., Ex. C).   In the section entitled "Particulars," Ms. Gomez explained:

> I.  I have been employed by the Respondent for approximately thirteen years.  I am employed as a Secretary I in the Retirement Department.  Since I filed a charge of discrimination with the EEOC, I have been subjected to discriminatory terms and conditions of employment.
>
> II.  Ms. Jean Anderson, Supervisor, has subjected me to discriminatory terms and conditions of employment, in that, she has instructed me to perform duties of the Accounting Clerk III, without pay and training, and informed me she will give me a write-up for neglect of duty if I do not perform the tasks; I was docked 3 hours of pay for the pay period January 23, 2003 through February 5, 2003; I was charged 3 ½ hours vacation time on February 24, 2003 while I was taking care of business in the Personnel department.  I have tried to resolve these issues and have received no corrective action or response.
>
> III.   I believe that I was discriminated against in violation of Title VII of the Civil Rights Act of 1964, as amended.  I believe I was discriminated in retaliation for protesting illegal discrimination and filing a charge of discrimination (270A201909, dated September 5, 2002) with the EEOC.

*Id*.  On February 27, 2004, the EEOC sent plaintiff a Dismissal and Notice of Rights letter, in which

---

[6]In the section entitled "Cause of Discrimination," Ms. Gomez marked only "Retaliation" as the basis of the alleged discrimination.

[7]As set forth in note 3, the copy of the charge submitted to the Court is neither signed nor dated by Ms. Gomez.  The plaintiff has not contested the contents of the charge form, and thus, for purposes of this motion, the Court will consider the EEOC charge as complete insofar as the Court must rely on the plaintiff's alleged basis for discrimination, the dates alleged, and the particulars set forth therein.

the EEOC again advised the plaintiff that it was "unable to conclude that the information obtained established violations of the statutes," and that, if she decided to sue in federal or state court, she had 90 days from receipt of the notice to do so.  *See* Dismissal and Notice of Rights, Charge No. 270-2003-01070 (attached to Pl.'s "Ex Parte Motion for Leave to Supplement MSJ Record").  On June 1, 2004, plaintiff initiated this action, in which she asserts claims based on racial discrimination, hostile work environment and retaliation in violation of federal and state law.[8]  *See generally* Complaint.

      As a general rule, a Title VII plaintiff may not bring claims in a lawsuit that were not included within the EEOC charge.  *See Auston v. Schubnell*, 116 F.3d 251, 254 (5th Cir. 1997) (barring retaliation claim because plaintiff "did not check the retaliation box on the charge form, nor did his account of the facts include any reference at all to retaliatory conduct").  In the Fifth Circuit, a Title VII complaint may properly include only those claims of discrimination that are reasonably related to or could be expected to grow out of an investigation of the allegations contained in the EEOC charge.  *See Thomas v. Texas Dep't of Crim. Justice*, 220 F.3d 389, 395 (5th Cir. 2000) (finding district court abused its discretion in amending complaint to allow claim for race discrimination when original EEOC charge included only charge of gender discrimination).  *See also Dollis v. Rubin*, 77 F.3d 777, 781 (5th Cir. 1995); *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455,

---

[8]In a reply memorandum, defendant argues that the lawsuit is untimely in its entirety because it was not filed within 90 days of plaintiff's receipt of the right-to-sue letter issued relative to the second-filed claim.  This argument fails in light of Fifth Circuit precedent holding that, when the record is unclear as to when a right-to-sue letter has been received by a plaintiff, as is the case herein, it is appropriate to presume that the letter was received within a range of three and seven days from the date the letter was mailed.  *See Taylor v. Books A Million, Inc.*, 296 F.3d 376, 379-80 (5th Cir. 2002), *cert. denied*, 537 U.S. 1200, 123 S.Ct. 1287 (2003).  Accordingly, in this case, where the right-to-sue letter relative to the '070 charge was mailed on Friday, February 27, 2004, the Court presumes that plaintiff received the letter no later than Friday, March 5, 2004.  Thus, the instant lawsuit, initiated in this Court on June 1, 2004, was filed within 90 days of the presumed date of receipt of that letter.  Nonetheless, nothing herein should be construed as finding that suit was timely filed within 90 days of issuance of the right-to-sue letter relative to plaintiff's initial EEOC complaint, the '909 charge.

466 (5th Cir. 1970).

      To determine whether a plaintiff's claims fall within the scope of the EEOC charge, the *Sanchez* Court began with "the obvious proposition that the crucial element of the charge of discrimination is the factual statement contained therein."  *Sanchez*, 431 F.2d at 462.  A complaint filed pursuant to Title VII may contain any charge of discrimination "like or related" to the factual allegation in the EEOC charge.  *Id.* at 466; *Dollis*, 77 F.3d at 781.

      In the instant matter, the Court has examined the plaintiff's Complaint in light of her two earlier-filed EEOC charges.  In the second charge, plaintiff only checked the box marked "Retaliation," leaving the "Race" and the "Other"[9] boxes empty on the EEOC charge form.  More importantly, however, her factual statement makes no mention, even remotely, of any of the discriminatory conduct based on race and hostile work environment that she later alleges in her judicial Complaint.  *See* Charge of Discrimination No. 270-2003-01070; *cf.* Charge of Discrimination No. 270A201909.  Instead, plaintiff's second EEOC charge alleged that she was discriminated against solely on the basis of retaliation in that her supervisor, Ms. Anderson, "instructed [Ms. Gomez] to perform duties of the Accounting Clerk III, without pay and training, and informed [Ms. Gomez] she will give [Ms. Gomez] a write-up for neglect of duty if [Ms. Gomez] [did] not perform the tasks; [Ms. Gomez] was docked 3 hours of pay for the pay period January 23, 2003 through February 5, 2003; [and] was charged 3 ½ hours vacation time on February 24, 2003 while ... taking care of business in the Personnel department."  *See* Charge of Discrimination No. 270-2003-01070.  The Court finds no mention in that charge of any discrete racially discriminatory acts or of any pattern of discriminatory conduct (*i.e.*, in the form of continuous discrimination based

---

      [9]The EEOC charge form completed by the plaintiff, particularly the section entitled "Cause of Discrimination," does not have a box marked "hostile work environment."

on race or a hostile work environment) on the part of the defendant School Board or plaintiff's supervisor. Additionally, the period of time during which the allegedly retaliatory conduct occurred was well-defined and relatively brief: January 6, 2003, through March 10, 2003; and, in that same section entitled "Date Discrimination Took Place," the plaintiff did not mark the box indicating "Continuous Action." *See id.* Finally, the last part of plaintiff's charge provides as follows: "I believe I was discriminated in <u>retaliation</u> for protesting illegal discrimination and filing a charge of discrimination (270A201909, dated September 5, 2002) with the EEOC." *Id.* (emphasis added).

Based on the foregoing, the Court finds plaintiff's claims of racial discrimination and of a hostile work environment asserted in her Complaint are not reasonably related to and/or could not be expected to grow out of an investigation of the allegations contained in plaintiff's EEOC charge filed in June of 2003 and for which she received a right-to-sue letter within 90 days of filing this action. *See Thomas,* 220 F.3d at 395. Furthermore, the only EEOC charge in which the plaintiff asserted claims based on racial discrimination, and possibly of a hostile work environment, is her initial administrative charge filed with the EEOC on September 5, 2002, and for which a right-to-sue letter was issued on June 25, 2003. Thus, the only way that plaintiff's claims stemming from that charge could survive the instant summary judgment motion was if she filed suit within 90 days of receipt of the corresponding right-to-sue letter. Plaintiff, however, did not file suit at that time. Therefore, any claims plaintiff may have had arising out of discrete acts of racial discrimination are time-barred. Moreover, more than 300 days elapsed from the date of her involuntary transfer to the School Board's Transportation Department (March 19, 2003),[10] and the date on which plaintiff filed this lawsuit. Therefore, even if plaintiff did present additional claims of racial discrimination and

---

[10]The Court finds that the date of transfer is the last date on which any discriminatory conduct, as alleged, could have occurred as a matter of law.

of a hostile work environment to the EEOC, the claims would be time-barred.[11]

Additionally, when presented with facts similar to the case at bar, at least one other court within this Circuit, as well as a panel of the Eighth Circuit, have found Title VII claims to be subject to dismissal based on a failure to exhaust administrative remedies.[12]  In *Lee v. Kroger Co.*, 901 F.Supp. 1218 (S.D. Tex. 1995), the district court was presented a motion for summary judgment filed by the defendant former employer, in which the defendant argued in part that the plaintiff's claims of racial discrimination and racial harassment were barred by the plaintiff's failure to exhaust his administrative remedies.  The plaintiff had filed two EEOC charges while he was employed by the defendant:  the first charged racial discrimination and harassment, and the second charged racial discrimination and harassment and retaliation for having filed the first EEOC charge.  *Id*. at 1221.

---

[11]While the Court is not aware of any Fifth Circuit case directly addressing the specific issues before this Court, the Court is confident that, if presented a similar factual scenario, the Fifth Circuit would find that the race discrimination and hostile work environment claims filed herein are time-barred. In *Lawrence Arnolie v. Orleans School Board*, Civil Action No. 01-2984, Eastern District of Louisiana, the plaintiff employee filed two charges of discrimination with the EEOC:  First, in September 1998, the plaintiff filed a charge alleging racial discrimination by his employer; plaintiff was issued a right-to-sue letter that same month.  *See generally* Complaint (C.A. No. 01-2984, Rec. Doc. No. 1); Motion for Judgment on the Pleadings (C.A.No. 01-2984, Rec. Doc. No. 17).  In September 2000, plaintiff filed a second charge with the EEOC, in which he alleged he was discriminated against in retaliation for his having filed a previous charge of discrimination; a right-to-sue letter was issued in July 2001.  *See id*. Soon thereafter, the plaintiff filed an action in this Court against the defendant school board claiming he was entitled to damages as a result of racial discrimination and retaliation.  The defendant moved for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), arguing in part that the plaintiff's claims based on the subject of his first EEOC charge, which alleged racial discrimination, were time-barred because the plaintiff did not file suit based on those allegations within 90 days of receipt of the right-to-sue letter issued in connection with that charge.  *See* Motion for Judgment on the Pleadings (C.A.No. 01-2984, Rec. Doc. No. 17).  Judge Mary Ann Lemmon granted the defendant's motion as unopposed. (C.A. No. 01-2984, Rec. Doc. No. 18).  Plaintiff appealed the decision, and the Fifth Circuit, in an unpublished decision, affirmed the district court's grant of judgment of the pleadings on the Title VII claims, finding in part that "the district court was correct when it implicitly ruled that the claims based on the subject of the plaintiff's first EEOC complaint were time-barred."  *See Arnolie v. Orleans Sch. Bd.*, 48 Fed. Appx. 917 (5th Cir. 2002).

[12]While those two cases were decided in part on the plaintiff's failure to exhaust his administrative remedies, the Court finds the reasoning employed therein to be equally instructive to this case involving the affirmative defense of the statute of limitations.

After the plaintiff received his right-to-sue letters, he filed suit against his employer, alleging violations of Title VII, including racial harassment, racial discrimination, denial of promotion and transfer, and retaliation. *Id.* That suit was dismissed, however, because the plaintiff did not file suit within 90 days of receiving the right-to sue letter. *Id.* Around that same time, plaintiff was terminated from his employment with the defendant. *Id.* Plaintiff then filed a third charge with the EEOC, asserting retaliation for having filed the first two charges and the lawsuit against his employer. *Id.* After the EEOC issued a right-to-sue letter, the plaintiff initiated a second lawsuit against his former employer alleging racial harassment, racial discrimination, denial of promotion and transfer, and retaliation for filing charges with the EEOC. *Id.*

In addressing the defendant's argument premised on the plaintiff's failure to exhaust administrative remedies, the *Lee* court examined the plaintiff's third EEOC charge wherein the plaintiff alleged he was indefinitely suspended from his job in retaliation for filing previous EEOC charges and a lawsuit against the defendant. 901 F.Supp. at 1224. On the charge form, the plaintiff checked the box labeled "Retaliation," while leaving blank the box labeled "Race." *Id.* The Court further noted that nowhere in his third charge did Lee allege that he had been discriminated against or harassed because of his race. *Id.* Similarly, in his affidavit accompanying the charge, Lee recited his version of the events which led to his discharge from employment and subsequent filing of his third EEOC charge. *Id.* Like this Court's analysis of the allegations presented by Ms. Gomez's EEOC charges and her judicial Complaint, the *Lee* court found that none of the facts alleged in the plaintiff's third EEOC charge indicated that he was complaining of racial discrimination or harassment, nor did they support additional claims of employment discrimination. Accordingly, the district court concluded that Lee had only set forth an allegation of retaliation in his EEOC charge, and therefore was precluded from maintaining additional claims of racial discrimination and

harassment in the action then pending before the court.

As stated earlier, the Eighth Circuit also has ruled similarly when presented like circumstances.  In *Williams v. Little Rock Municipal Water Works*, 21 F.3d 218, 223 (8th Cir. 1994), the Eight Circuit held that the district court did not err when it granted summary judgment in favor of the defendant on the plaintiff's discrimination claims.  In *Williams*, the plaintiff had checked off the "Retaliation" box, leaving the "Race" box empty, and only asserted facts in support of her retaliation claim in her EEOC charge.  She therefore could not raise race discrimination claims in federal court due to her failure to exhaust administrative remedies.  In *Williams*, the plaintiff first filed a race discrimination charge with the EEOC in 1987.  *Id*. at 221.  She was issued a right-to-sue letter but opted not to sue her employer at that time.  *Id*.  In 1990, she filed a charge alleging retaliation and subsequently filed a judicial complaint which also alleged race discrimination, arguing that her claims for discrimination were directly related to her claims for retaliation.  *Id*. at 222.  The court in *Williams* addressed this argument as follows:

> Not only did Williams fail to check the box for race discrimination, her 1990 EEOC charge and supporting affidavit specifically and unambiguously alleged that Water Works retaliated against her because she had filed a charge with the EEOC in January 1987.  The 1990 EEOC charge does not even hint of a claim of race discrimination.  This amounts to more than a mere technicality and is the product of an unconstrained reading of Williams' charge.

*Id*. at 223.  Thus, the Eighth Circuit agreed with the district court that the plaintiff there could not raise race discrimination claims due to her failure to exhaust administrative remedies.

In light of this caselaw and for the reasons stated earlier, the Court finds that Ms. Gomez's claims of race discrimination and a hostile work environment in violation of Title VII are barred by the statute of limitations, absent the Court's application of some equitable doctrine.

Plaintiff attempts to avoid the apparent untimeliness by invoking the continuing violation doctrine.  In light of this Court's determination that the second EEOC charge is limited to

plaintiff's retaliation claim, the Court disagrees.  In *Morgan, supra,* the Supreme Court held that claims based on a hostile work environment will not be time barred so long as all acts which constitute the claim are part of the same unlawful practice and at least one act falls within the time period.  536 U.S. at 101.  However, as set forth above, plaintiff's second charge does not event hint to any claim or act of racial discrimination or of a hostile work environment.  Thus, because none of the acts which may support plaintiff's claims of continuous racial discrimination and/or of a hostile work environment fall within the 300-day limitation period, plaintiff may not avail herself of the "continuing violation" doctrine.  This doctrine has no bearing on the statutory requirements that a plaintiff exhaust his or her administrative remedies before filing a civil complaint, and file suit within 90 days of receipt of a right-to-sue letter relative to a timely charge alleging at least one discriminatory act committed as part of the pattern or policy alleged in the judicial complaint.

Additionally, while the deadline for filing an EEOC charge is subject to waiver, estoppel and equitable tolling, it is the plaintiff's burden to demonstrate a factual basis to justify tolling of the limitation period.  *See Hood v. Sears, Roebuck & Co.*, 168 F.3d 231, 232 (5th Cir. 1999); *Conaway v. Control Data Corp.*, 955 F.2d 358, 362 (5th Cir. 1992).  Plaintiff, however, has presented the Court with no evidence to support application of these equitable doctrines.  Therefore, the Court finds no factual or legal basis to toll the limitations period.  Ms. Gomez's racial discrimination and hostile work environment claims are time-barred.

The defendant School Board also urges the Court find that certain of the plaintiff's Title VII retaliation claims are time-barred.  Specifically, the defendant argues that all allegedly retaliatory acts occurring more than 300 days prior to June 2003 (*i.e.*, on or about August 6, 2002) are time-barred.  Based on a thorough review of the summary judgment evidence, the only incident of retaliation occurring prior to August 2002 of which Ms. Gomez complains is the poor

performance evaluation plaintiff received in July of 2002.  *See* Gomez Dep., pp. 30, 41, 51-54.

While the plaintiff received that evaluation prior to filing her initial EEOC charge, the record

demonstrates that, at the very least, plaintiff was aware in July 2002 at the time she received the

evaluation that the unsatisfactory mark may have been reprisal for her having attempted to see Dr.

Lloyd of the OPSB internal compliance office in order to make a complaint against her supervisor

Ms. Anderson. *See id.*, pp. 52-54.  Because plaintiff filed her EEOC claim charging retaliation more

than 300 days after the poor performance evaluation, the Title VII retaliation claim, only insofar as

plaintiff seeks damages on account of that evaluation, is therefore time-barred.  Moreover, even if

that claim was timely asserted in this Court, plaintiff's claim based on the evaluation would fail on

the merits for reasons stated *infra*.

## C.     <u>Plaintiff's Retaliation Claims, in part, are not cognizable under Title VII</u>.

In order to establish a *prima facie* case of retaliation, a plaintiff must show that:  (1)

she engaged in activity protected by Title VII; (2) she suffered an adverse employment action; and

(3) a causal connection exists between the protected activity and the adverse employment action.

*See Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 427 (5th Cir. 2000) (citing *Webb*, 139 F.3d

at  540).  This *prima facie* case gives rise to an inference of retaliation, and the burden of proof then

shifts to the defendant, who must articulate a legitimate nondiscriminatory reason for the challenged

employment action.  *See Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 408 (5th Cir. 1999).

To survive summary judgment, the plaintiff must then make a showing sufficient to allow a

reasonable factfinder to conclude that the defendant's rationale is pretextual.  *See McDonnell*

*Douglas Corp. v. Green*, 411 U.S. 792, 801-803, 93 S.Ct. 1817 (1973).

Ms. Gomez satisfies the first element of her *prima facie* case as the filing of an EEOC

complaint and the filing of a complaint using an employer's internal administrative process are

clearly a protected activities within the meaning of the statute.  *Walker v. Thompson*, 214 F.3d 615, 629 (5th Cir. 2000) (citing *Dollis*, 77 F.3d at 781); *Fierros v. Texas Dep't of Health*, 274 F.3d 187, 194 (5th Cir. 2001) .

With respect to the second element of the *prima facie* case, the Fifth Circuit has consistently held that "Title VII was designed to address <u>ultimate</u> employment decisions, not to address every decision made by employers that arguably might have some tangential effect upon those ultimate decisions."  *Mattern v. Eastman Kodak Co.*, 104 F.3d 702, 707 (5th Cir. 1997) (emphasis added) (quoting *Dollis*, 77 F.3d at 781-82).  Stated differently, the decision must be "[a] tangible employment action constitut[ing] a significant change in employment status ... or a decision causing a significant change in benefits."  *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761, 118 S.Ct. 2257 (1998).  "Ultimate employment decisions" are acts such as "hiring, granting leave, discharging, promoting, and compensating."  *Walker*, 214 F.3d at 629 (citing *Dollis*, 77 F.3d at 782).

In the instant matter, plaintiff alleged in her Complaint that she was subjected to increased work duties without additional pay or training, threatened disciplinary actions and poor performance evaluations, having pay docked and vacation time and benefits wrongfully deducted, and a transfer to a different department at a different location, all in retaliation for having complained internally and for having filed her EEOC Charge of race discrimination.  *See* Compl., ¶ 9.  The summary judgment evidence, viewed in the light most favorable to the plaintiff, demonstrates that the following actions were taken against the plaintiff during the time period following her having complained internally and/or having filed the initial EEOC charge:

1.  In September 2002, Ms. Gomez was given increased work duties (from those of a "Secretary I" to those of an "Accounting Clerk III") without additional pay or training.  Gomez Dep., pp. 39, 42.  The increased duties, which entailed the calculation of employee times and retirement benefits refunds, were beyond the plaintiff's skill set, and thus she was unable to perform the calculations.  *Id*, pp. 42-44.

2. In November 2002, Ms. Anderson verbally reprimanded plaintiff in the presence of plaintiff's co-workers, in that Ms. Anderson threatened plaintiff with disciplinary action because plaintiff was not able to do the accounting work (*i.e.*, the increased duties) she had been assigned. *Id.*, pp. 29-31, 39.

3. On March 17 or March 18, 2003 (within one or two days of her being transferred), the plaintiff's pay was docked, in that Ms. Anderson signed the plaintiff out on the attendance sheet at some time in the mid-morning as being gone for the remainder of the day.[13] *Id.*, pp. 31-32, 56-57. At the time, the plaintiff was still employed by OPSB in the Retirement Services Department. *Id.*, p. 31.

4. On March 19, 2003, plaintiff was transferred to a secretary I position at the OPSB Department of Transportation. *Id.*, p. 42. With the transfer, the plaintiff relocated to the Almonaster office, and she was not paid less money. *Id.*, pp. 34-35. While she first stated that the office was not a "lesser office," plaintiff then testified that the physical space of the Almonaster office was less desirable because her former office itself had been "much nicer in the decor, the cleanliness of it." *Id.*, pp. 35-36. With the new position, the plaintiff also testified that she likes her new co-workers and new boss. *Id.*, p. 36.

5. On one occasion in 2002, Ms. Anderson requested to Human Resources that the plaintiff be removed to another school. *Id.*, p. 39. Plaintiff was aware of this request because she saw a memorandum addressed to Ms. Anderson in the inter-office mail. *Id.*, p. 45.

6. Ms. Anderson asked certain employees to perform overtime work, which consisted of balancing state reports; however, Ms. Anderson never gave the plaintiff the opportunity to do such overtime work. *Id.*, pp. 41, 48. The last time this occurred was in either September 2002 or sometime in 2001. *Id.*, p. 41.

7. On one occasion in July 2002, Ms. Anderson gave the plaintiff a poor performance evaluation. *Id.*, p. 41.

8. Both before and after the plaintiff complained internally and to the EEOC, she was excluded from a majority of staff meetings. *Id.*, pp. 37-38. These staff meetings were held irregularly, approximately one or two times per month. Affidavit of Catherine Gomez, ¶ 4 (attached to Pl.'s Mem. in Opposition).

---

[13]In her Complaint and in her EEOC charge filed in June 2003, Ms. Gomez also alleged that the defendant wrongfully deducted vacation pay and other benefits. During her deposition, however, Ms. Gomez testified that she could not recall any such instance. Gomez Dep., p. 33.

*See also* Gomez Dep., pp. 37-38 (summarizing the eight separate acts of alleged retaliation).[14]

Based on the foregoing, the defendant argues that plaintiff's claim of retaliation must fail as none of her supervisor's alleged acts constitute ultimate employment decisions. In support of its argument, the School Board states that the plaintiff was not terminated or demoted, and cannot make any showing of a loss in compensation, duties and/or benefits. On the other hand, plaintiff responds that genuine issues of material fact exist as to the frequency, severity and pervasiveness of the aforementioned acts, and that the acts of the plaintiff's supervisor "are the aftermath of plaintiff's attempted complaint in July 2002...." Pl.'s Mem. in Opposition, p. 15.

The Court has reviewed the plaintiff's allegations, as factually supported by the Rule 56 materials, and finds as a matter of law that a majority of the conduct of which the plaintiff complains does not constitute adverse employment actions against Ms. Gomez. It is well-established in the Fifth Circuit that negative reprimands and poor performance evaluations do not constitute ultimate adverse employment decisions actionable under Title VII. *See, e.g., Douglas v. DynMcDermott Petroleum Operations Co.*, 144 F.3d 364, 373, n. 11 (5ᵗʰ Cir. 1998) (low performance rating does not constitute adverse employment action), *cert. denied*, 525 U.S. 1068, 119 S.Ct. 798 (1999); *Southard v. Texas Bd. of Crim. Justice*, 114 F.3d 539, 555 (5ᵗʰ Cir. 1997) (undesirable work assignments are not adverse employment actions); *Messer v. Meno*, 130 F.3d 130, 140 (5ᵗʰ Cir. 1997) (having grievance left unresolved by employer, having conversations closely monitored, having work and conduct criticized, having input ignored, not being allowed to represent the employer at functions, and having department downsized as part of an agency-wide reduction

---

[14]The eight separate incidents which the Court will consider as potential acts of retaliation are broader in scope than the plaintiff's EEOC claim charging retaliation. Nonetheless, the Court finds that the eight acts outlined above are "like or related to" the allegations found in the EEOC charge, and thus may be properly considered as part of the plaintiff's timely claim(s) of Title VII retaliation filed in this Court. *Dollis*, 77 F.3d at 781.

do not constitute adverse employment actions); *Mattern*, 104 F.3d at 707-708 (hostility from fellow employees, having tools stolen, visits to the plaintiff's home by supervisors, verbal threats of termination, reprimands, having work reviewed more negatively, missed pay increases, and being placed on "final warning" do not constitute adverse employment actions); *Dollis*, 77 F.3d at 779-780 (being refused consideration for promotion, being refused attendance at a training conference, having work criticized to an outside vendor, and being given false information regarding aspects of employment do not constitute adverse employment actions); *Clair v. Chater*, 1995 WL 608472 (E.D.La. 1995) (interrogation by supervisors and written reprimand are not adverse employment actions).

Just as a poor performance evaluation is not an adverse employment action, neither are the alleged instances of plaintiff's supervisor having requested sometime in 2002 that plaintiff be removed to another school, and plaintiff's having been excluded from staff meetings.  Plaintiff has not cited to (and this Court's independent research has not unearthed) any authority whatsoever for the proposition that a defendant makes an ultimate employment decision when it merely contemplates relocating, reassigning and/or transferring an employee, or when an employer excludes an employee from a work-related meeting.  Simply put, this "action" (or inaction) is not on par with the types of action the Supreme Court and the Fifth Circuit have specified as sufficient to support a retaliation claim.  Importantly, the Fifth Circuit has pointed out that an employer's action that lacks consequence is not an "adverse employment decision."  *Mattern*, 104 F.3d at 708 (5th Cir. 1997). In the case at bar, the two instances of the requested removal or reassignment of the plaintiff and the exclusions from staff meetings, without more, clearly lacked consequence and are thus not actionable as Title VII retaliation claims.

Plaintiff's claim that her transfer on March 19, 2003 constitutes an adverse

employment action also fails.  The Fifth Circuit has held as a matter of law that under Title VII principles an employment transfer may qualify as an "adverse employment action" if the change makes the job "objectively worse."  *Pegram v. Honeywell*, 361 F.3d 272, 283 (quoting *Hunt v. Rapides Healthcare Sys., LLC*, 277 F.3d 757, 770 (5th Cir. 2001)).  Where the evidence produces no objective showing of a loss in compensation, duties or benefits, but rather solely establishes that a plaintiff was transferred from a prestigious and desirable position to another position, that evidence is insufficient to establish an adverse employment action.  *Pegram*, 361 F.3d at 283 (citing *Serna v. City of San Antonio*, 244 F.3d 479, 485 (5th Cir. 2001).  In the case at bar, plaintiff fails to tender any evidence refuting the defendant's position other than stating in conclusory fashion that her current position has fewer office amenities, *i.e.*, that plaintiff's new office was less clean in its decor.  Gomez Dep., pp. 35-36.  The plaintiff has not suggested that, with her transfer, she has increased travel time to work, a change in scheduled hours or significantly different duties.  Rather, plaintiff has only testified that she is not paid any less money, and that she likes her new boss and her new co-workers.  *Id*., pp. 34-36.  Based on the foregoing, the plaintiff's claim based on her transfer to the defendant's transportation department fails as a matter of law because the summary judgment evidence demonstrates that the incident at issue is nothing more than a lateral transfer.  *See Hockman v. Westward Communications, LLC*, 401 F.3d 317, 331 (5th Cir. 2004) (a purely lateral transfer cannot constitute an adverse employment action) (citing *Burger v. Central Apt. Mgmt., Inc.*, 168 F.3d 875, 879 (5th Cir. 1999).

Because plaintiff was not subjected to an adverse employment action as a matter of law with respect to the alleged reprimands, poor performance evaluation, the removal request, exclusions from staff meetings and the March 19, 2003 transfer, plaintiff cannot establish a *prima facie* case of retaliation based on those allegations.  Accordingly, the defendant is entitled to

summary judgment dismissing plaintiff's Title VII retaliation claims in part.

On the other hand, plaintiff's claims of Title VII retaliation based on her having been docked pay, having been denied the opportunity to perform overtime work, and the increase in duties might conceivably be classified as adverse employment actions.  Fifth Circuit caselaw suggests that the determination of whether docking or withholding an employee's pay constitutes an adverse employment action depends in part on whether the loss to the employee is *de minimis*.  *See Walker*, 214 F.3d at 629 (stating that the plaintiff could not demonstrate that the *de minimis* loss of overtime pay ($2.89) rose to level of an actionable adverse employment decision for purposes of Title VII retaliation claim).  *See also Fierros v. Texas Dep't of Health*, 274 F.3d 187, 193-94 (5th Cir. 2001) (failure of the plaintiff to receive merit pay increase of $684 on an annual salary of $20,924 is not *de minimis*).  In the case at bar, the Court must initially make a *de minimis* inquiry.  Neither party, however, has submitted proof of the plaintiff's rate of pay and the total loss incurred on the relevant date:  March 17 or 18, 2003.  While this Court believes that the defendant may very well be entitled to judgment as a matter of law on this claim once sufficient evidence is presented to the Court, the Court cannot make any such determination at this time given the dearth of evidence relative to plaintiff's income.

The Court also must address plaintiff's claim of retaliation based on her supervisor's denying Ms. Gomez the opportunity to do overtime work made available to other co-workers.  The Court is not aware of any Fifth Circuit case law deciding whether the failure or refusal to extend the opportunity to work overtime is an adverse employment decision.  At least two district courts within the Circuit have held, however, that such conduct is an ultimate employment decision that will support a Title VII retaliation claim.  *See Hadad v. American Airlines, Inc.*, 2003 WL 292170, *7 (N.D. Tex. Feb. 2, 2003) (denying summary judgment on Title VII retaliation claim because plaintiff

adduced "evidence of at least one ultimate employment decision a denial of overtime...."); *Williams*

*v. J.B. Parks Wholesale Florist, Inc.*, 1997 WL 160194, ** 1, 5 (N.D. Tex. Mar. 31, 1997) (holding

in Title VII retaliation context that plaintiff's allegation that overtime was reduced was actionable

because it related to compensation and "caused an immediate reduction in her income."). Assuming

the truth of plaintiff's allegations, Ms. Gomez was last passed over for overtime work on or about

September 4, 2002, after the plaintiff attempted to lodge an internal complaint but immediately prior

to her filing the initial EEOC charge. *See* Gomez Dep., pp. 40-41; Gomez Aff., ¶ 6. While not

every decision made by an employer is an employment action within the meaning of Title VII, the

Court is presently unable to determine whether the denial of overtime work in the case at bar

constitutes an actionable adverse employment action.

The final alleged retaliatory conduct to be addressed is the allegation that the

plaintiff's work duties were increased, without additional pay or training, beginning in September

2002. The Fifth Circuit has instructed that a "reassignment with significantly different

responsibilities" which results in a "significant change in employment status ... or ... in benefits"

may constitute an actionable adverse employment action. *See Evans v. City of Houston*, 246 F.3d

344, 353 (5th Cir. 2001) (citing *Ellerth*, 524 U.S. at 761). In the case at bar, plaintiff testified that

she did not attempt to perform these duties because she did not possess the attendant skills. Gomez

Dep., p. 44. Based on the foregoing, the Court has serious doubts as to whether the increase in

duties objectively resulted in a significant change in employment status. Still, the parties have not

presented the Court evidence of how the plaintiff's duties were increased (aside from the general

notion of "Secretary I" to "Accounting Clerk III"), the time period during which the plaintiff was

expected to fulfill these duties, whether the duties were in fact that of an Accounting Clerk III, and

the wage rate of an Accounting Clerk III similarly situated. Based on the foregoing, the Court finds

that genuine issues of material fact remain as to whether the alleged increase in duties is an adverse employment action.

The third and final element of the *prima facie* case of Title VII retaliation is a causal connection between the protected activity and the adverse employment action. *See Byers*, 209 F.3d at 427. The Fifth Circuit has explained that the connection required is "causation-in-fact or 'but for' causation." *Shirley v. Chrysler First, Inc.*, 970 F.2d 39, 43 (5th Cir. 1992). Given the temporal proximity between the protected activity and the alleged adverse employment actions in the case at bar, the Court finds that the summary judgment evidence, when viewed in its totality and in the light most favorable to plaintiff, is sufficient to create a genuine issue of material fact as to whether the alleged actions of Ms. Anderson would not have occurred "but for" the plaintiff's protected activity.

In addition, the defendant School Board has not made any argument or presented any evidence regarding a legitimate, nondiscriminatory reason for the alleged adverse employment actions taken against the plaintiff. Accordingly, the Court finds that genuine issues of material fact exist relative to the plaintiff's Title VII retaliation claim insofar as she has alleged that her pay was docked, she was denied the opportunity to do overtime work, and her work duties increased. Thus, the defendant is not entitled to summary judgment dismissing plaintiff's claim of Title VII retaliation in those respects.

### III. CONCLUSION

For all the foregoing reasons, **IT IS ORDERED** that:

(1)    The Motion for Summary Judgment filed by the defendant Orleans Parish School Board is **GRANTED IN PART**, in that the plaintiff's federal claims of (a) race discrimination, (b) hostile work environment, and (c) retaliation based on alleged reprimands, poor performance evaluation, the removal request, exclusions from staff meetings and the March 19, 2003

transfer are dismissed with prejudice;

(2)    The Motion for Summary Judgment is **DENIED IN PART**, insofar as the defendant moves for judgment in its favor dismissing plaintiff's retaliation claim as it concerns the allegations of docked pay, the denial of overtime work and increased work duties; and because the defendant has not established that it is entitled to summary judgment dismissing all of plaintiff's state law claims against the defendant.

(3)    Counsel for the parties must submit to the undersigned no later than Monday, August 15, 2005, at 12 o'clock noon, a memorandum addressing plaintiff's state law claims in light of this Order.

(4)    The defendant shall file an amended answer raising the affirmative defense of statute of limitations no later than the close of business on Wednesday, August 17, 2005.

New Orleans, Louisiana, this  11th  day of August, 2005.

**KURT D. ENGELHARDT**
**United States District Judge**